IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-00121-01-CR-W-DW |
| ) | |
| STACY T. BRISCOE, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant's Motion to Suppress Evidence and Statements (doc #25). For the reasons set forth below, it is recommended that the motion be denied.

## I. BACKGROUND

On March 30, 2015, a criminal complaint was filed charging defendant Stacy T. Briscoe with being a felon in possession of ammunition and a firearm.

On April 14, 2015, the Grand Jury returned a two-count indictment against defendant Briscoe. Count One charges that on March 28, 2015, defendant, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed, in and affecting interstate commerce, one live round of Sellier & Bellot, 9mm caliber, ammunition. Count Two charges that on March 28, 2015, defendant, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed, in and affecting interstate commerce, a Norinco, Model Para, 9mm caliber handgun.

An evidentiary hearing on the motion to suppress was held on September 22, 2015.

Defendant Briscoe was represented by Assistant Federal Public Defender Todd M. Schultz. The Government was represented by Assistant United States Attorney Jeffrey Q. McCarther. The Government called Officer Rares Toma of the Kansas City, Missouri Police Department as a witness. The defense called no witnesses to testify. Subsequent to the hearing, the parties filed a Joint Stipulation of Facts Regarding Suppression Hearing (doc #31).

## II. FINDINGS OF FACT

On the basis of the evidence presented at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On March 28, 2015, Officer Rares Toma was working as a patrol officer for the Center Patrol Division. (Tr. at 3) At approximately 3:32 p.m., Officer Toma was dispatched to respond to a 911 call of a shooting in the area of 2454 Wabash, Kansas City, Missouri. (Tr. at 3) The two people involved in the shooting were described as a black male wearing a black or blue shirt and tan pants and a second black male wearing a black shirt and dark pants. (Tr. at 4)

2. Upon arriving at 2454 Wabash, Officer Toma was flagged down by the calling party and a couple of neighbors who were waving their hands. (Tr. at 7) The calling party and neighbors were pointing behind the house to the west and saying the guy who was shooting is running that way right now. (Tr. at 4, 7) The officers conducted an area canvass around the block and to the west, the direction everyone was pointing that the subject was running. (Tr. at 4)

3. Officer Toma observed someone running westbound on 25th Street and this person appeared to be holding or reaching for something in his pocket or waistband with his right hand, which Officer Toma found to be consistent with someone holding a weapon. (Tr. at 4, 9) The officers were about a block away from the person running. (Tr. at 4) The person matched the description given by dispatch. (Tr. at 5) The officers pursued the person running. (Tr. at 4) Officer Toma testified that the officers lost visual of the person for a couple seconds, until their vehicle caught up on 25th Street. (Tr. at 9)

4. The officers detained the person who was later identified as Stacy Briscoe at approximately 3:36 p.m. (Tr. at 5; Stipulated Facts (doc #31)) Defendant Briscoe was detained about a block and a half away from where the shooting was reported. (Tr. at 15) Officer Toma patted down Briscoe for officer safety. (Tr. at 10) Nothing was found in Briscoe's waistband, the place where Officer Toma

2

5. Officer Toma went back to the calling party to get clarification to make sure that the officers had the right person. (Tr. at 11) Officer Toma asked for a description of the shooter that the caller had said was running when the officers showed up. (Tr. at 11) The caller said the shooter was wearing a dark shirt. (Tr. at 11) The person detained, defendant Briscoe, was wearing a dark blue shirt. (Tr. at 11)

6. The officers located a vehicle that was shot up and abandoned in an alley in the immediate area. (Tr. at 12) The officers requested a K-9 to sniff the area. (Tr. at 12) The search took less than half an hour. (Tr. at 13) A .9mm Norinco handgun was discovered in the grass about ten feet from where defendant Briscoe had been running. (Tr. at 6, 13) The gun was loaded with ammunition that had red paint on the bottom of the bullets. (Tr. at 6) Officer Toma testified that he had never seen that type of marking on a bullet before. (Tr. at 6)

7. At approximately 4:22 p.m., an officer requested consent from defendant Briscoe to search his person for keys to the vehicle that had been shot up. (Tr. at 13; Stipulated Facts (doc #31)) Briscoe consented to be searched. (Tr. at 13) A single round of live ammunition was discovered in Briscoe's pocket. (Tr. at 6, 14) The officer stated, "I got a bullet in your pocket." (Stipulated Facts (doc #31)) Defendant, of his own accord, stated, "I keep that for old … what you call that … uh uh … a never, a never, a never, a never … what you call it … a never do souvenir." (Stipulated Facts (doc #31))

8. The bullet found in defendant Briscoe's pocket was of the same caliber and model and brand as the bullets discovered in the handgun discovered in the grass. (Tr. at 6) The bullet in Briscoe's pocket had the same unusual red paint marking as the bullets discovered in the gun. (Tr. at 6)

9. Defendant Briscoe was placed under arrest. (Tr. at 14)

### III. DISCUSSION

Defendant Briscoe seeks to suppress all evidence and testimony relating to evidence obtained during the search of defendant on March 28, 2015. (Motion to Suppress Evidence and Statements (doc #25) at 1) Specifically, defendant argues that the description received by officers was too vague to support a reasonable suspicion to stop defendant, so any evidence seized as a result of the stop must be suppressed. (Id. at 2-3)

3

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated …." U.S. Const. amend. IV. "This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." Terry v. Ohio, 392 U.S. 1, 8-9 (1968). However, "what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." Id. at 9. An investigative stop by officers, while it does involve a seizure of a person, need only be supported by a reasonable, articulable suspicion that criminal activity may be afoot to pass Constitutional scrutiny. See Id. at 25-31; United States v. Horton, 611 F.3d 936, 940 (8th Cir. 2010), cert. denied, 562 U.S. 1193 (2011). As set forth in Horton:

> Various behaviors and circumstances can contribute to, or be sufficient to provide, reasonable, articulable suspicion. For example, unprovoked flight at the sight of an officer can contribute to reasonable, articulable suspicion. Illinois v. Wardlow, 528 U.S. 119, 124 … (2000)(finding the suspect's flight upon seeing police officers while in a high-crime area justified Terry stop). Also, a stop typically is justified when a suspect matches the description of a person involved in a disturbance near in time and location to the stop. United States v. Hicks, 531 F.3d 555, 558 (7th Cir. 2008).

611 F.3d at 940.

The record in this case establishes that officers were dispatched to the area of 2454 Wabash, Kansas City, Missouri, on a shots-fired call. (See Fact No. 1, supra) The two people involved in the shooting were described as a black male wearing a black or blue shirt and tan pants and a second black male wearing a black shirt and dark pants. (Id.) Upon arriving at 2454 Wabash, Officer Toma was flagged down by the calling party and a couple of neighbors who were waving their hands. (See Fact No. 2, supra) The calling party and neighbors were pointing behind the house to the west and saying the guy who was shooting is running that way right now.

4

(Id.)  The officers conducted an area canvass around the block and to the west, the direction everyone was pointing that the subject was running. (Id.) Officer Toma observed someone running westbound on 25th Street and this person appeared to be holding or reaching for something in his pocket or waistband with his right hand, which Officer Toma found to be consistent with someone holding a weapon. (See Fact No. 3, supra) The person matched the description given by dispatch. (Id.) The officers pursued the person running. (Id.) The officers detained the person who was later identified as Stacy Briscoe at approximately 3:36 p.m. (four minutes after they received the dispatch), about a block and a half away from where the shooting was reported. (See Fact Nos. 1 and 4, supra) Officer Toma went back to the calling party to get clarification to make sure that the officers had the right person. (See Fact No. 5, supra) Officer Toma asked for a description of the shooter that the caller had said was running when the officers showed up. (Id.) The caller said the shooter was wearing a dark shirt. (Id.) The person detained, defendant Briscoe, was wearing a dark blue shirt. (Id.)

The officers then located a vehicle that was shot up and abandoned in an alley in the immediate area. (See Fact No. 6, supra) The officers requested a K-9 to sniff the area. (Id.) A .9mm Norinco handgun was discovered in the grass about ten feet from where defendant Briscoe had been running. (Id.) The gun was loaded with ammunition that had red paint on the bottom of the bullets. (Id.) Defendant Briscoe consented to a search of his person. (See Fact No. 7, supra) A single round of live ammunition was discovered in Briscoe's pocket. (Id.) The bullet found in defendant Briscoe's pocket was of the same caliber and model and brand as was discovered in the handgun discovered in the grass and had the same unusual red paint marking as the bullets discovered in the gun. (See Fact No. 8, supra)

The Court finds that the officers had a reasonable, articulable suspicion that defendant Briscoe may have been engaged in criminal activity based on the description of the shooter provided to the officers and the facts that witnesses were pointing out the direction that the shooter was running "right now" and Briscoe was observed running from the area of the shooting in the direction the witnesses indicated. The officers were, therefore, justified in conducting an investigative stop of defendant Briscoe. The officers' suspicions were confirmed when a gun was found in the area defendant Briscoe had been running and bullets found in that gun matched a bullet found on defendant's person. No constitutional violation took place.

## IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Stacy T. Briscoe's Motion to Suppress Evidence and Statements (doc #25).

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve timely objections shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

*/s/ Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE